HENRY F. WHITE, Plaintiff, *v.* HIAWATHA SILVER BLACK FOX CORPORATION and URBANE C. LYONS, Defendants.

Supreme Court, Broome County, November 11, 1924.

Contracts — action for rescission of contract of purchase by plaintiff of capital stock of defendant corporation — plaintiff purchased stock in reliance upon statements that were false and untrue — statements made by salesmen pursuant to apparent authority given by defendant corporation — oral testimony as to statements and representations of salesmen properly admitted where purpose was to rescind written contract — judgment directed for plaintiff for rescission of contract and for return of consideration paid.

Judgment should be directed for the plaintiff in an action for the rescission of a contract of purchase of defendant's capital stock and for the return to the plaintiff of the consideration paid by him, where it appears that the plaintiff purchased the stock in reliance upon the statements and representations made by salesmen of an investment company who were clothed with apparent authority by the defendant to make the representations and statements as to the value of the stock and plans for further disposal thereof, which were proved to be false and which were the inducing cause of the purchase of the stock.

A circular, containing defendant's name, received by the plaintiff before he purchased the stock, and reciting that the salesmen who would call upon him would " go into full details " with reference to the statements in the letter as to the value of the defendant's stock and plans for further disposal thereof, invested the salesmen with apparent authority to make the statements of which plaintiff complained.

The receipt of oral testimony concerning the statements and representations of the salesmen was proper, since the plaintiff was attempting to rescind the contract rather than to enforce the provisions of any agreement outside the written instrument; therefore, the testimony was not improper on the ground that it tended to vary the terms of the written contract.

ACTION for the rescission of a contract for the purchase by plaintiff of the capital stock of the defendant.

*Roy C. McHenry (D. V. Ashley,* of counsel), for the plaintiff.

*Mangan & Mangan,* for the defendants.

RHODES, J.    This action is brought for the rescission of a contract of purchase by plaintiff of capital stock of defendant.    About the 10th of April, 1923, the defendant entered into a written contract with Morgan-Lander & Co., Inc., of New York city, by which the latter company was employed to sell 4,000 shares of the common stock and 2,000 shares of the preferred stock of the corporation. One of the provisions of this agreement was as follows: " It is further agreed that the party of the first part [Hiawatha Silver Black Fox Corporation] shall be responsible for any and all representations made in literature which it has previously published and circulated and that the said party of the second part [Morgan-Lander Co., Inc.] will not make any representations or issue any literature unless the same has been approved in writing by the party of the first part."

It is but fair to state that the record indicates that the president and secretary of the defendant did not intend that any misrepresentations should be made and attempted to limit and control the authority delegated to the selling agents.    However, after the agreement referred to was made, a circular letter was issued with the knowledge and consent of the defendant corporation upon its letterheads and bearing at the bottom the printed signature " Hiawatha Silver Black Fox Corporation."    This circular letter contained, among other things, the following statement: " We want to impress upon each individual stockholder the fact that the stock which he purchased a short time ago at $10.00 a share has enhanced in value *as it is now selling on the open market at* $12.50 *per share.*  *  *  *    In order to facilitate our program, we have entered into contract with a prominent investment house for the further disposal of the balance of our securities.  *  *  *    The representative calling upon you will bear  a  personal letter of authorization and *will go into full details regarding the above."*    One of these circulars was mailed to the plaintiff and shortly thereafter, and on the 18th of April, 1923, Mr. L. A. Moss and a Mr. Wyburn, salesmen employed by Morgan-Lander & Co., Inc., called upon plaintiff in an endeavor to sell him some of defendant's stock.    It is not clear that these representatives exhibited to plaintiff any written authorization, but plaintiff produced a witness who testified that on April seventeenth the witness had been visited by Mr. Moss and Mr. Wyburn and that Mr. Moss exhibited a written

statement that he was authorized to sell stock for the defendant. Plaintiff was already a stockholder of defendant, having a few months previously purchased a quantity of its stock. As the result of the visit of the salesmen to the plaintiff, on or about said 18th day of April, 1923, he purchased additional stock of the defendant corporation, and claims that he was induced so to do by statements of said representatives to the effect that the stock was selling for twelve dollars and fifty cents per share on the open market, and that the defendant had made an arrangement with Morgan-Lander & Co., Inc., by which, in the middle of June, Morgan-Lander & Co., Inc., were to take over the treasury stock or any stock that the stockholders might wish to part with, at seventeen dollars and fifty cents a share. These statements were false and untrue. No arrangement had been entered into by which the treasury stock and any other stock of the corporation was to be purchased by Morgan-Lander & Co., Inc., at seventeen dollars and fifty cents a share. The statement was also untrue that the stock was then selling on the open market for twelve dollars and fifty cents a share. All of the stock to be sold had been turned over by the defendant to Morgan-Lander & Co., Inc., at twelve dollars and fifty cents a share, and this was the price being asked by the salesmen who were endeavoring to float the stock. Aside from this, it does not appear that any of the stock was being sold on the open market. It is clear that the authority of the salesmen was expressly limited by the agreement between the defendant and Morgan-Lander & Co., Inc. Therefore, the only question is whether or not the defendant clothed the salesmen with apparent authority to make the statements complained of. In the circular bearing defendant's name and which was received by the plaintiff before he purchased the stock, it was stated that the representative who would call would go into full details regarding the matters set forth in the circular. Those matters included, among other things, the arrangement for the further disposal of the balance of defendant's securities. I think the statement in the circular to the effect that the representative would go into full details, clothed the salesmen with apparent authority to make the representations and statements which proved to be false and which were the inducing cause of the purchase of the stock by plaintiff. When the plaintiff was induced to purchase said stock he signed a subscription agreement. The agreement contained the following statement: " This agreement constitutes the entire contract, Hiawatha Silver Black Fox Corporation not being bound by any agreement not herein embodied; no delivery of stock shall be made hereunder until the total amount of this subscription is paid for in cash." Defendant objected to

the receipt of any oral testimony as to statements and representations of the salesmen, upon the ground that it tended to vary the terms of a written contract. But the plaintiff is not seeking to enforce the provisions of any contract outside of the written agreement; he is attempting to rescind a contract which he claims he was induced to enter into in reliance upon facts and circumstances which were untrue, the apparent situation having been created by the false statement of the salesmen, such statements being made pursuant to apparent authority with which the defendant had invested them. In other words, plaintiff claims that he entered into the contract relying upon the apparent state of facts which did not exist. Plaintiff was entitled to introduce the evidence of the false statements for the purpose of showing that there never had been a meeting of the minds and that what purports to be a written contract is in fact no contract at all. The evidence was admitted, not to contradict or vary the contract, but to destroy a written contract because it was founded upon false statements, fraud and misrepresentations, and was based upon an assumed state of facts, which did not, in reality, exist.

When plaintiff agreed to accept said stock, he delivered to the defendant as part payment therefor six shares of the Dodge Manufacturing Company, evidenced by certificate No. P-1020, and it is this stock which plaintiff seeks to recover back upon the rescission of said contract.

I, therefore, direct judgment for the plaintiff for the rescission of the contract and for the return to plaintiff of the consideration paid by him in exchange for said stock, with costs.